IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 20-276** |
| | : | |
| **SHAWN ERIC SUTTON** | : | |

# MEMORANDUM

**KEARNEY, J.** **July 28, 2022**

We sentenced Shawn Eric Sutton to thirty-seven months of imprisonment followed by four years of supervised release approximately six months ago following his plea of guilty to distributing crack cocaine and aiding and abetting. We addressed Mr. Sutton's medical conditions including our officer's description of his ongoing medical treatment from his primary care physician for asthma, high cholesterol, high blood pressure, and type 2 diabetes. We considered these factors in imposing a sentence at the lowest end of the agreed sentencing guidelines. Mr. Sutton now returns after the Bureau of Prisons placed him in the United States Penitentiary Lewisburg seeking home confinement or reduction of his sentence largely citing the same medical conditions we studied and considered approximately six months ago. We are not permitted to replace the Bureau of Prisons' discretion as to home confinement. Mr. Sutton has not shown extraordinary and compelling reasons for his release and, even if he did, we could find no factors set by Congress which presently warrant reducing his sentence. We deny Mr. Sutton's motion for compassionate release including placement in home confinement without prejudice.

## I. Background

Our grand jury charged Shawn Eric Sutton with one count of knowingly and intentionally distributing and aiding and abetting the distribution of twenty-eight grams or more of a mixture

and substance containing a detectable amount of cocaine base ("crack").[1] Mr. Sutton pleaded guilty to a lesser included offense.[2] He admitted to distributing crack and aiding and abetting.[3] He also agreed not to contest forfeiture.[4] Our probation officer prepared and counsel agreed upon the facts in an extensive presentence investigation report detailing Mr. Sutton's background including his diabetes, asthma, high blood pressure, and high cholesterol diagnoses. We found a sentencing guidelines range of thirty-seven to forty-six months to be appropriate after hearing from counsel. We sentenced Mr. Sutton to thirty-seven months' imprisonment on January 26, 2022 followed by four years' supervised release.[5] We required Mr. Sutton to self-surrender to the Bureau of Prisons by April 1, 2022.[6] Mr. Sutton is serving his sentence at United States Penitentiary, Lewisburg.[7] USP Lewisburg has 1,120 incarcerated persons.[8] As of July 28, 2022, there are two confirmed positive incarcerated person cases and zero staff cases of COVID-19 at USP Lewisburg.[9] Consistent with the Bureau of Prisons's efforts to control the spread of COVID-19, 1,133 inmates and 293 staff at USP Lewisburg have received at least two doses of the COVID-19 vaccine.[10]

Mr. Sutton provided us with a visit summary from his February 25, 2021 visit at Einstein Healthcare Network.[11] The medical professional diagnosed Mr. Sutton with Type 2 diabetes, high blood pressure (hypertension), high cholesterol (hypertriglyceridemia), insomnia, mild asthma, a fungal infection of the fingernails or toenails (onychomycosis), and urinary frequency.[12] The provider prescribed Mr. Sutton medications to treat his conditions, including albuterol 90 mcg/inh, fluticasone 10 mcg/inh, glipizide 5 mg, lisinopril 20 mg, metformin 1000 mg, traZODone 50 mg, and a nebulizer.[13] Mr. Sutton reports he currently takes the following medications while at USP Lewisburg to treat his diabetes, high blood pressure, high cholesterol, and asthma: metformin 1000 mg twice a day, lisinopril 20 mg, atorvastin 50 mg, albuterol 220 mg inhaler, and fluticasone propionate 50 mcg nasal spray.[14] Mr. Sutton does not disclose his vaccination status.

## II. Analysis

Mr. Sutton moves for compassionate release approximately six months after we sentenced him.[15] He asserts his health conditions place him at a high risk for COVID-19 considering the Facility's current conditions and asks us to move him to home confinement.[16]

Congress allows us to grant compassionate release if Mr. Sutton: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;" (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[17] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[18] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[19] Mr. Sutton "bears the burden of proving that extraordinary and compelling reasons exist."[20]

### A. Mr. Sutton exhausted his administrative remedies.

Congress requires an incarcerated person to exhaust his administrative remedies before seeking compassionate release from the Court.[21] Our Court of Appeals requires strict compliance with the exhaustion requirement.[22] Mr. Sutton submitted a request for compassionate release to the Warden on May 3, 2022, and the Warden denied the request on May 10, 2022.[23] Mr. Sutton exhausted his administrative remedies.

### B. Mr. Sutton fails to show extraordinary and compelling reasons warrant a reduction in his sentence.

Mr. Sutton argues he meets extraordinary and compelling reasons for a sentence reduction due to his medical conditions, the conditions at the Facility, and the risk of COVID-19.[24] He also

requests we move him to home confinement.[25] We disagree he has demonstrated extraordinary and compelling reasons for a sentence reduction, and we lack authority to move him to home confinement. We must deny his motion.

We first address Mr. Sutton's request for home confinement. We lack authority to move him to home confinement because the Federal Bureau of Prisons has sole authority to make housing decisions for federal inmates.[26]

We turn to whether he demonstrates extraordinary and compelling reasons warranting a sentence reduction. He argues his medical conditions, COVID-19, and the prison's failure to mitigate the risk of the virus spreading warrant compassionate release. It is by now well-settled "the existence of COVID-19 cannot alone justify compassionate release."[27] COVID-19 may constitute an extraordinary and compelling reason for release only if a movant shows he is "particularly susceptible to serious illness or death" from contracting COVID-19, "usually as a result of one or more underlying comorbidities."[28]

Mr. Sutton must also show "he is unable to receive or benefit from a vaccine."[29] The proliferation of vaccines throughout the Bureau of Prisons means compassionate release motions based on COVID-19 "generally lack merit."[30] "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[31]

Mr. Sutton's health issues and his fear of contracting COVID-19 do not constitute extraordinary and compelling reasons for compassionate release. Mr. Sutton asserts he is obese and has diabetes, high blood pressure, high cholesterol, and asthma.[32] Mr. Sutton did not provide medical records from the Bureau, but his visit summary from Einstein confirms he has diabetes, high blood pressure, high cholesterol, and asthma.[33] Mr. Sutton argues he is at high risk for

COVID-19 and worries about the potential consequences if he contracts COVID-19.[34] Four of his conditions – obesity, diabetes, high blood pressure, and asthma – place him at a higher risk of a negative outcome if he contracts COVID-19 according to the Centers for Disease Control.[35] Mr. Sutton did not disclose his vaccination status. He fails to show or argue he is unable to receive or benefit from a vaccine. Choosing not to receive the COVID-19 vaccine weighs against granting compassionate release.[36] Mr. Sutton complains USP Lewisburg is not following COVID-19 protocols. Even assuming this is true, only two incarcerated persons at USP Lewisburg have a confirmed case of COVID-19 as of July 28, 2022.[37] The Facility provided at least two doses of the COVID-19 vaccine to 1,133 incarcerated persons and is operating at a "COVID-19 Operational Level 2" to prevent the spread of COVID-19.[38] We fail to see extraordinary and compelling reasons warranting a sentence reduction. Mr. Sutton fails to meet his burden. Mr. Sutton is one of the "vast majority" of incarcerated persons for whom COVID-19 does not constitute an extraordinary and compelling reason for release.[39]

### C. The sentencing factors also do not weigh in favor of a reducing his sentence imposed six months ago.

Even if Mr. Sutton could show extraordinary and compelling reasons, we could not find a basis to reduce the sentence imposed six months ago after applying the factors provided by Congress. We may reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[40] We "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[41] Congress in section 3553(a) requires us to consider, among other things, the nature and circumstances of Mr. Sutton's offenses and his history and characteristics; the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and the need for the

sentence imposed including to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.[42]

Mr. Sutton pleaded guilty to distributing and aiding and abetting the distribution of a substance containing crack and is serving thirty-seven months in the custody of the Bureau of Prisons.[43] We considered the factors Congress defined in section 3553(a) when we sentenced him approximately six months ago. His time presently served is insufficient to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment for his offense, to afford adequate deterrence to criminal conduct, and to protect the public from his further crimes.[44] We commend Mr. Sutton for detailing a proposed release plan including an address where he would reside and opportunities for employment.[45] But these efforts do not warrant a change in our analysis of the section 3553(a) factors. Mr. Sutton's sentence of thirty-seven months remains sufficient but no greater than necessary to accomplish the goals of sentencing.

**III. Conclusion**

Mr. Sutton does not present an extraordinary and compelling reason for compassionate release. We deny Mr. Sutton's motion for compassionate release and his request to transfer him to home confinement.

---

[1] ECF Doc. No. 1. The amount charged in the indictment is 58.151 grams.

[2] ECF Doc. No. 55 ¶ 1; ECF Doc. No. 59, Transcript (Tr.), Sept. 27, 2021, 32:3–33:2.

[3] ECF Doc. No. 55 ¶ 1; Tr., Sept. 27, 2021, 32:3–33:2.

[4] ECF Doc. No. 55 ¶ 1.

---

[5] ECF Doc. No. 83.

[6] *Id.*

[7] ECF Doc. No. 84 at 6; *see also* Federal Bureau of Prisons Inmate Locator, Shawn Eric Sutton, Inmate number 11528-509, https://www.bop.gov/inmateloc/, (indicating Mr. Sutton is presently housed at Lewisburg with a release date of November 5, 2024).

[8] *USP Lewisburg*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lew/ (last visited July 28, 2022).

[9] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 28, 2022). One inmate has died from the virus since the beginning of the pandemic. *Id.* 318 inmates and 171 staff have recovered from the virus. *Id.* USP Lewisburg is at "Level 2" operations to contain the spread of COVID-19. *USP Lewisburg*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lew/ (last visited July 28, 2022); *BOP COVID-19 Operational Levels*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (explaining modified operation levels) (last visited July 28, 2022).

[10] *COVID-19 Coronavirus*, Federal Bureau of Prisons, *supra* n.9.

[11] ECF Doc. No. 84 at 9–13.

[12] *Id.* at 9.

[13] *Id.* at 9–10.

[14] *Id.* at 20.

[15] *Id.*

[16] *Id.* Mr. Sutton claims the Facility's staff's "attitude" including a view they do not need to wear masks or conduct temperature checks on each other "is actually a violation of the 8th Amendment that protects everyone from cruel and inhumane treatment." *Id.* at 20. This argument is not appropriate on, nor does it warrant in this case, compassionate release. *United States v. Cato*, No. 14-315-1, 2020 WL 4193055, at *1 n.1 (E.D. Pa. July 21, 2020); *United States v. Buckman*, No. 14-540-1, 2020 WL 4201509, at *5 (E.D. Pa. July 22, 2020). There are only two positive cases at USP Lewisburg. Even if the prison guards have such an attitude regarding COVID-19 mitigation efforts, COVID-19 is under control at the facility.

[17] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[18] *Andrews*, 12 F.4th at 259–60.

[19] 18 U.S.C. § 3582(c)(1)(A)(i).

[20] *United States v. Smith*, No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[21] *See supra* n.19.

[22] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[23] ECF Doc. No. 84 at 16, 21.

[24] *Id.* at 20.

[25] *Id.*

[26] *See United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (the Bureau of Prisons has the sole authority to place a prisoner on home confinement); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) (agreeing with the district court judge "whether to transfer an inmate to home confinement is a decision within the exclusive discretion" of the Bureau of Prisons); *United States v. Milchin*, No. 17-284, 2022 WL 196279, at *1 n.1 (E.D. Pa. Jan. 21, 2022) (same); *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *4–5 (M.D. Pa. Jan. 4, 2022) (the CARES Act "does not provide federal courts with jurisdiction to direct or grant such relief. Thus, the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is 'not reviewable by any court.'").

[27] *United States v. Singh*, 525 F. Supp. 3d 543, 546 (M.D. Pa. 2021) (quoting *Raia*, 954 F.3d at 597); *see also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

[28] *Singh*, 525 F. Supp. 3d at 546.

[29] *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

[30] *United States v. Reed*, No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021).

[31] *Broadfield*, 5 F.4th at 803.

[32] ECF Doc. No. 84 at 20.

[33] *Id.* at 9–10.

[34] *Id.* at 20.

[35] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 28, 2022) (listing the following conditions: cancer; chronic kidney disease; chronic liver disease; chronic lung diseases; cystic fibrosis; dementia or other neurological conditions; diabetes type 1 or 2; disabilities, such as down syndrome; heart conditions, such as hypertension; HIV; being in an immunocompromised state; mental health conditions; obesity; physical inactivity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; substance use disorders; and, tuberculosis).

[36] *See, e.g.*, *United States v. Church,* No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) ("We agree that Church's 'unexplained refusal to accept a COVID-19 vaccination when offered negates [his] otherwise compelling medical reasons for release.'"); *United States v. Graham*, No. 09-602, 2021 WL 3728337, at *3 (E.D. Pa. Aug. 23, 2021); *United States v. Ortiz*, No. 18-264, 2021 WL 1422816, at *3–4 (E.D. Pa. Apr. 15, 2021) (collecting cases).

[37] COVID-19, Federal Bureau of Prisons, *supra* n.9.

[38] *Id.*

[39] *Broadfield*, 5 F.4th at 803.

[40] 18 U.S.C. § 3582(c)(1)(A)(i).

[41] *United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at *6 (W.D. Pa. Dec. 9, 2021) (further citation omitted).

[42] Section 3553(a) provides in relevant part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> (5) any pertinent policy statement – (A) issued by the Sentencing Commission …; and (B) that … is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]
>
> . . .

18 U.S.C. § 3553(a).

[43] ECF Doc. No. 55; ECF Doc. No. 84 at 6.

[44] *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").

[45] ECF Doc. No. 84 at 2.